

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

**PETER C. McKITTRICK**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE
LAW CLERK

BETHANY COLEMAN-FIRE
LAW CLERK

TONIA McCOMBS
LAW CLERK

November 2, 2017

Edward T. Fu (via ECF)
Gary M. Bullock and Associates, PC
1000 SW Broadway, Suite 2460
Portland, OR  97205

James T. Shipley (via ECF)
Lygo & Shipley, LLP
2233 NE 47th Avenue
Portland, OR 97213

      Re:    <u>Robert Binh Lai v. Anh Q. Tran</u>, Adv. No. 17-3044-pcm

Dear Counsel:

      Plaintiff alleges that Anh Q. Tran (Debtor) owes him a $45,000 debt that is nondischargeable under § 523(a)(2)(A).[1]  The purpose of this letter is to rule on the trial that commenced on October 17, 2017.  For the reasons stated below, I conclude that, to the extent Debtor owes a debt to Plaintiff, it is dischargeable in Debtor's chapter 7 bankruptcy case.

Background/Facts[2]

      Plaintiff is Debtor's uncle.  Joint Statement of Agreed Facts (Agreed Facts), ¶ 1. Plaintiff's sister and Debtor's mother, Hong Thi Lai (Hong), was the sole owner of record of a house located in Vietnam (the Property).   Agreed Facts, ¶ 1.  In March of 2007, Plaintiff and Hong signed two written documents (referred to collectively as the 2007 documents).  The first document acknowledged that Plaintiff was entitled to half ownership of the Property and the second that Hong and Plaintiff  had decided to sell the Property and equally split the proceeds.

---

    [1]    Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330.

    [2]    The following facts are taken from the parties' Joint Statement of Agreed Facts, Doc. No. 18, and the testimony and other evidence submitted at trial.

Agreed Facts, ¶ 2. Plaintiff testified that he drafted the 2007 documents.

The parties agree that a contract of sale was signed on June 5, listing Hong as the seller and Do Quoc Bao (Bao) as her power of attorney. Agreed Facts, ¶ 4. That contract was not, however, introduced into evidence. The Property sold in September.[3] Plaintiff learned of the sale some time that same month. Agreed Facts, ¶ 5. Hong testified that the Property sold for approximately $250,000 in U.S. dollars. Plaintiff offered no argument or evidence to dispute the $250,000 sales price. The sales proceeds were received in Vietnam. Agreed Facts, ¶ 7. Plaintiff has never received any of those proceeds.

In December of 2014, Plaintiff filed a state court complaint against Hong for breach of contract. Agreed Facts, ¶ 9. Plaintiff obtained a default judgment against Hong for $240,342 in May of 2015. Agreed Facts, ¶ 9. The parties did not supply this Court with Plaintiff's complaint, but it appears, and Debtor does not dispute, that Plaintiff's state court action against Hong was based on allegations that she breached the 2007 documents by not paying him one-half of the proceeds of the sale of the Property. In January of 2016, Plaintiff filed a state court fraudulent transfer lawsuit against Hong, Debtor and others. Agreed Facts, ¶ 11. That action is still pending. Id.

Analysis

Plaintiff alleges that Debtor received at least $44,500 from Hong as part of a fraudulent transfer scheme and that Debtor "had knowledge of [his mother's] fraudulent transfer scheme at the time he received the transfers. . . ." Complaint, ¶ ¶ 25, 26. Section 523(a) provides that a discharge in chapter 7 does not discharge a debtor from any debt

> "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"

§ 523(a)(2)(A). The creditor bears the burden of proving by a preponderance of the evidence that a debt is nondischargeable under § 523(a)(2)(A). In re Sabban, 600 F.3d 1219, 1222 (9th Cir. 2010). Exceptions to discharge are construed strictly against the objecting creditor and liberally in favor of the debtor. 4 Collier on Bankruptcy, ¶ 523.05.

---

[3] The Joint Statement of Agreed Facts at ¶ 12 states that the Property was sold on June 5, 2014. However, the testimonial evidence produced at the trial was that the Property actually sold in September of 2014. Plaintiff's attorney conceded during closing argument that there was no evidence in the record to support a finding that the Property sold in June and stipulated to a September sale date. This case is unique in that there is no documentary evidence of the fact, date, or amount of the sale. According to the testimony given at trial, it is not unusual for property transactions in Vietnam to occur with less documentation than is routine in this country.

In Husky Int'l Elecs., Inc. v. Ritz, __ U.S. __, 136 S. Ct. 1581, 194 L. Ed. 2d 655 (2016), the Supreme Court resolved a circuit split on the question of whether "actual fraud" under § 523(a)(2)(A) requires a false representation "or whether it encompasses other traditional forms of fraud that can be accomplished without a false representation, such as a fraudulent conveyance of property made to evade payment to creditors." Id. at 1585. The court held that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without false representation." Id. at 1586. In so holding, the Court observed that the recipient of a fraudulent conveyance,

> "who, with the requisite intent, also commits fraud—can 'obtai[n]' assets 'by' his or her participation in the fraud. See, e.g., McClellan v. Cantrell, 217 F. 3d 890 (CA 7 2000); see also supra, at __, 194 L. Ed. 2d, at 663. If that recipient later files for bankruptcy, any debts 'traceable to' the fraudulent conveyance, see Field, 516 U. S., at 61, 116 S. Ct. 437, 133 L. Ed. 2d 351; post, at ___, 194 L. Ed. 2d, at 667, will be nondischargable under §523(a)(2)(A)."

Id. at 1589.

In McClellan, the case cited with approval by the Supreme Court in the excerpt from Husky set forth immediately above, the Seventh Circuit reversed the bankruptcy court's dismissal of a complaint brought under § 523(a)(2)(A) for failure to state a claim, holding that the term "actual fraud is broader than misrepresentation."[4] 217 F.3d at 893. The bankruptcy debtor in McClellan was alleged to have been the recipient of a fraudulent transfer from her brother of assets that secured a debt owed by the brother to a third party. The court held that the term "actual fraud" is broadly defined to include "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." Id. (internal quotation marks omitted). If a transferee/bankruptcy debtor acts as an "accomplice" to the transferor's fraudulent transfer or colludes with the transferor to defeat the rights of the transferor's creditors, the resulting debt is nondischargeable under § 523(a)(2)(A) to the extent of the value of the assets transferred. McClellan, 217 F.3d at 893-95.

For Plaintiff to prevail in this case, he must prove, by a preponderance of the evidence, the existence of a fraudulent transfer scheme in which Hong transferred her assets with the actual intent to hinder, delay, or defraud her creditors.[5] Then, he must also prove that Debtor had

---

[4] Plaintiff mischaracterizes the ultimate holdings in Husky and McClellan in his trial brief. In neither case did the pertinent court determine that the debts at issue were nondischargeable under § 523(a)(2)(A). Both cases were remanded to allow the bankruptcy courts to make that determination.

[5] Plaintiff argues in his trial brief that a debt may be excepted from discharge under § 523(a)(2)(A) even if the transfer from the transferor (Hong) to the transferee (Debtor) was only constructively fraudulent, *i.e.*, if Hong did not actually intend to hinder, delay or defraud any of her creditors. See Plaintiff's Trial Memorandum, p. 5. McClellan, which the Supreme Court cited with approval in Husky, explicitly rejects Plaintiff's argument:

actual fraudulent intent, *i.e.*, that Debtor acted as an accomplice to or colluded with Hong. For the reasons discussed below, Plaintiff fails on both grounds.[6]

### A. Plaintiff did not prove the existence of a fraudulent transfer scheme.

A transfer is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if it was made with actual intent to hinder, delay, or defraud any creditor of the transferor. ORS 95.230(1). Although "it is not necessary that the [transferor] have exhibited intent as to the specific creditor bringing the fraudulent transfer claim," 37 Am.Jur.2d Fraudulent Conveyances and Transfers § 10 (2013), Plaintiff does not argue that Hong intended to hinder, delay or defraud any creditor of hers other than him. Therefore, in determining the existence of a fraudulent transfer scheme in this case, I will focus on Hong's intent *vis a vis* Plaintiff.

---

> "[W]hen a debtor transfers property to a third party without adequate consideration, the transfer is deemed a fraud on the debtor's creditors. The fraud may be either constructive or actual. . . . The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones, but the allegation here is that the transfer involved an *actual* fraud; the debtor's brother was *deliberately* attempting to thwart [his creditor's] effort to collect the debt due him."

McClellan v. Cantrell, 217 F. 3d 890, 894 (7th Cir. 2000)(internal citations omitted; original emphasis). Therefore, I am inclined to disagree with Plaintiff's position. However, I need not decide the question because Plaintiff did not establish that Hong made any constructively fraudulent transfers. Proving constructive fraud generally requires proof that the transferor is insolvent at the time of the transfer in question, *i.e.*, that the sum of the transferor's debts was greater than all of his or her assets, ORS 95.210(1), or that the transferor was generally not paying her debts as they became due. ORS 95.210(2). Plaintiff made no such showing and therefore must prove that Hong acted with actual intent to hinder, delay or defraud her creditors to prevail.

[6] At the end of Plaintiff's trial memo, he suggests that Debtor owes him a nondischargeable debt under the traditional test applicable in § 523(a)(2)(A) cases which requires proof of:

> "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct."

In re Harmon, 250 F.3d 1240, 1246 (9th Cir. 2001). To the extent Plaintiff properly alleged such a claim, he has abandoned it. Plaintiff offered no evidence or argument to satisfy the elements of a traditional claim for nondischargeability under § 523(a)(2)(A).

The alleged transfers from Hong to Debtor for which Plaintiff seeks a determination of nondischargeability fall into two categories. The first category is comprised of a total of $20,000 (the $20,000) that Debtor brought back from Vietnam in two separate return trips. See Agreed Facts, ¶ 14. Plaintiff argues in his trial memorandum that "it is likely that this $20,000 actually represents [a] portion of the sale proceeds." Plaintiff's Trial Memorandum, p. 9. The evidence does not support Plaintiff's contention.

Plaintiff produced no evidence that the $20,000 is traceable to the proceeds of the sale of the Property or that it otherwise ever belonged to Hong. Debtor testified that in 2013, he began receiving installments of an inheritance from his biological father who died many years ago. According to Debtor, his paternal grandmother was holding his inheritance and intended to give it to him when he married, but as her health failed she decided he should have it for his education instead. Debtor testified that he visited Vietnam twice in 2015 and that during those two trips he received two installments of his inheritance totaling $20,000. Hong and Debtor's sister corroborated Debtor's testimony about the source of the $20,000. In fact, Debtor and his sister both testified that Debtor's sister accompanied him to Vietnam to pick up the final 2015 installment. I found the testimony of Debtor, Hong, and Debtor's sister to be credible on the source of the $20,000 and Plaintiff produced no convincing evidence to the contrary. Plaintiff has not shown that the $20,000 is traceable to the sale of the Property or that Hong otherwise transferred that sum to Debtor as part of a fraudulent transfer scheme.

The second category of transfers from Hong to Debtor for which Plaintiff seeks a determination of nondischargeability is comprised of the following 27 checks from Hong to Debtor totaling $36,920 (the Checks):

|    | Date    | Amount      |
|----|---------|-------------|
| 1  | 6/27/14 | $34,500.00  |
| 2  | 6/28/14 | $150.00     |
| 3  | 6/30/14 | $400.00     |
| 4  | 7/3/14  | $100.00     |
| 5  | 7/9/14  | $100.00     |
| 6  | 7/11/14 | $50.00      |
| 7  | 7/17/14 | $100.00     |
| 8  | 7/20/14 | $100.00     |
| 9  | 7/21/14 | $50.00      |
| 10 | 7/25/14 | $100.00     |
| 11 | 7/26/14 | $50.00      |
| 12 | 7/28/14 | $50.00      |

| 13 | 8/1/14 | $100.00 |
|---|---|---|
| 14 | 8/4/14 | $50.00 |
| 15 | 8/7/14 | $200.00 |
| 16 | 8/14/14 | $150.00 |
| 17 | 8/22/14 | $100.00 |
| 18 | 8/27/14 | $50.00 |
| 19 | 8/29/14 | $50.00 |
| 20 | 8/30/14 | $50.00 |
| 21 | 9/1/14 | $50.00 |
| 22 | 9/3/14 | $100.00 |
| 23 | 9/3/14 | $20.00 |
| 24 | 9/7/14 | $50.00 |
| 25 | 10/7/14 | $50.00 |
| 26 | 11/9/14 | $50.00 |
| 27 | 1/5/15 | $100.00 |
| | Total | $36,920.00 |

See Exhibit 8. It is the first check for $34,500 (the June 27 check) that was the focus of the trial.[7] The Checks undisputably constitute transfers from Hong to Debtor.[8] The question is

---

[7]  On the same date as the June 27 check, Hong received a wire transfer from Bao in the amount of $49,983. See Exhibit 6. Plaintiff argued in his trial memorandum that that wire transfer, and the others shown in Exhibit 6, represent a portion of the proceeds of the sale of the Property. Debtor testified that the wire transfers were loans. Plaintiff's contention that the wire transfers constitute portions of the proceeds of the sale of the Property cannot be squared with the Agreed Facts submitted by the parties, which states that the proceeds of the sale of the Property were received in Vietnam. In addition, the June 27, 2014, wire transfer and one other listed in Exhibit 6 actually pre-date the sale of the Property. Plaintiff offered no explanation at trial of how those wire transfers could constitute proceeds of a sale that had not yet occurred. It appears that Plaintiff does not contend that the wire transfers were advances of the sale proceeds to the extent they pre-date the sale or that any such advances should be deemed transfers for the purposes of a fraudulent conveyance analysis.

[8]  Plaintiff's expert testified at trial that it was her opinion that Debtor, not Hong, signed three of the checks, including the June 27 check. Hong testified that she signed all, and

whether Hong made those transfers with fraudulent intent to hinder, delay or defraud Plaintiff. I conclude that she did not. I express no opinion as to whether Hong fraudulently transferred assets after the time of the transfers to Debtor that are the subject of this proceeding. It is not necessary for me to determine that question to decide the only question presented in this case: Whether Debtor owes a debt to Plaintiff that is nondischargeable under § 523(a)(2)(A).

Whether a transferor had the requisite fraudulent intent is determined as of the date of the transfer alleged to have been fraudulent. Nelson v. Hansen, 278 Or. 571, 578 (1977). See also 37 Am. Jur.2d Fraudulent Conveyances and Transfers, § 6 (2013)("The determination as to whether a fraudulent conveyance has occurred is made on a case-by-case basis, based on the facts and circumstances of each case, and depends on conditions that existed when it was made[.]")(footnotes omitted). Moreover, it is a transferor's subjective state of mind that is determinative of the question whether he or she acted with the requisite actual intent. 5 Collier on Bankruptcy ¶ 548.04[1][b].

A transferor's "[f]raudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." In re Devers, 759 F.2d 751, 753-54 (9th Cir. 1985). In determining actual intent, courts often look for certain badges of fraud, including whether:

"(a) The transfer or obligation was to an insider;

(b) The debtor had retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor had absconded;

(g) The debtor had removed or concealed assets;

---

Debtor denied that he signed any, of the Checks. Both Hong and Debtor did testify that because Hong does not read or write English, she uses other people, including Debtor, to fill in information on checks signed by her. I have discounted the importance of the expert's testimony for two reasons. First, the expert stated that when she conducted her analysis, she was not aware that anyone other than Hong wrote any of the information on the Checks. Although the expert testified that that fact did not have any impact on her opinion about who signed the Checks, she did not explain why that was the case. Second, regardless of who actually signed the Checks, Hong and Debtor both credibly testified that the transfers effected by the Checks were made under Hong's direction and with her full and contemporaneous knowledge and consent.

>(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>(I) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>(j) The transfer had occurred shortly before or shortly after a substantial debt was incurred; and
>
>(k) The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor."

ORS 95.230(2).

As a threshold matter, almost all of the transfers at issue, including especially the June 27 check, which was the focus of the trial and the largest by far of the Checks, occurred before the Property was sold in September. The precise date of the sale was not established at trial but of the 27 checks, twenty were dated before September. The other seven, which were dated September or after, total only $420.

Of the badges of fraud listed above, only (a) is clearly implicated. Hong and Debtor both testified that the June 27 check was in repayment of loans made by Debtor to Hong over several years. According to their testimony, Debtor loaned Hong funds from time to time when she needed money for various things, such as taxes or mortgage payments. I found their testimony to be credible as to the existence of the loans, but inconclusive as to their precise amounts. Therefore, Debtor has shown that Hong received reasonably equivalent value for some portion of the amounts transferred to Debtor via the Checks. There is no evidence that Hong retained control of the funds transferred in the Checks. In fact, Debtor used the June 27 check to purchase a car that he sold in 2016. Agreed Facts, ¶ 13. There is no evidence that she concealed the transfers. Indeed, if Hong had wanted to do so she would have transferred cash to Debtor instead of writing him checks. There also is no evidence that the transfers were of substantially all of Hong's assets. Plaintiff did not argue or prove that Hong was insolvent at the time of the transfers or became insolvent shortly thereafter. Plaintiff's state court attorney testified that he sent Hong a demand letter "fairly soon after" November 3, 2014. Plaintiff filed his state court lawsuit against Hong in December of 2014. The vast majority of the Checks (all but the last one or two) were written well before those dates. If Plaintiff threatened Hong with legal action before November of 2014, he failed to produce any evidence of that fact.

As stated, Plaintiff maintains that he was entitled to one-half of the proceeds of the sale of the Property. Plaintiff conceded at trial that he did not contribute any money or other value to the Property. Instead, he testified, without any documentary evidence, that his parents had a partial ownership interest in the Property and that his father wanted Plaintiff to inherit that interest because he was his father's favorite among the family's 13 siblings. Plaintiff testified that his father had a will leaving his alleged interest in the Property to Plaintiff. However, like much of Plaintiff's testimony in this case, Plaintiff's testimony about the alleged will primarily was not based on Plaintiff's personal knowledge. Plaintiff admitted he has never seen the will. I

Edward T. Fu
James T. Shipley
November 2, 2017
Page 9

have discounted the value of much of Plaintiff's testimony because it was based largely on hearsay, speculation and because, on more than one occasion, Plaintiff testified that there was documentation in existence to support his testimony, but then failed to produce any such documentation at trial.

Hong testified that she purchased the Property in 1989 with funds belonging solely to her. I found Hong to be credible on that point. Hong does not dispute that she signed the 2007 documents but testified that she did so under duress and pressure from Plaintiff and other members of her family. At the time she signed the 2007 documents, Hong had relatively recently immigrated to this country with two of her children, spoke no English, and was dependent on her family for housing and employment. Plaintiff himself corroborated Hong's testimony about the circumstances under which the 2007 documents came into existence when he admitted under oath at the trial that he forced Hong to sign those documents. Both Plaintiff and Hong testified that paper documents are of little value in Vietnam. The court is hesitant to make generalizations about an entire culture, but the record in this matter is replete with evidence that at least this particular family attaches little significance to legal documentation. See, e.g., Exhibit G.

This Court is bound by the state court default judgment. Because of that judgment, Hong owes a debt to Plaintiff. The circumstances under which the 2007 documents came into existence cannot negate the fact that Plaintiff is a judgment creditor of Hong.[9] The circumstances under which Plaintiff signed the 2007 documents are, however, relevant to Hong's intent at the time of the transfers and shortly before and after the Property was sold. Hong did not have an actual intent to hinder, delay or defraud Plaintiff when she made the transfers as issue here because she subjectively did not believe that Plaintiff was entitled to any of the proceeds of the sale of the Property at that time.

For the reasons stated above, I find that Hong was not engaged in a fraudulent transfer scheme at the time of the transfers at issue in this matter.

B. Plaintiff did not prove Debtor acted with actual fraudulent intent.

Even if I am wrong and Hong was engaged in a fraudulent transfer scheme at the time of the pertinent transfers, Plaintiff did not establish that Debtor himself acted with the requisite actual intent. In other words, Plaintiff did not prove that Debtor acted as Hong's accomplice or colluded with her. "Such intent may be inferred from [a transferee's] acceptance of a transfer

---

[9] Debtor argued at trial that a necessary prerequisite of Plaintiff's § 523(a)(2)(A) case is missing because Plaintiff never gave Hong any "money, property or services." I am inclined to disagree with Debtor's argument based on the existence of the state court judgment against Hong, the broad definition of "debt" and "claim" under both the Uniform Fraudulent Transfer Act and the Bankruptcy Code, and the Husky and McClellan decisions. However, I need not decide whether Debtor is correct because I find that Plaintiff has not met his burden of showing that Debtor owes him a debt that is nondischargeable under § 523(a)(2)(A) for the independent reasons discussed in this letter.

9

Case 17-03044-pcm    Doc 31    Filed 11/02/17

that [the transferee] knew was made with the purpose of hindering the transferor's creditor(s), but it may not be implied as a matter of law." In re Lawson, 791 F.3d 214, 220 (1st Cir. 2015). "Proof of intent . . . is measured by the [bankruptcy] debtor's subjective intention at the time of the transaction in which the debtor obtained the money, property or services." In re Meier, 2016 Bankr. LEXIS 3711, *34 (Bankr. N.D. Ill. 2016). Because direct proof is often unavailable, fraudulent intent may be inferred from surrounding circumstances. Id. The circumstances of this case do not warrant an inference that Debtor had the necessary actual intent when he accepted the transfers.

Debtor testified repeatedly and credibly that he had no knowledge of the 2007 documents at the time of the pertinent transfers. Moreover, as I have already discussed, the Property had not even been sold at the time Debtor received the vast majority of the transfers from Hong. Plaintiff states in his trial memorandum that Debtor lived with this mother "at all material times." Plaintiff's Trial Memorandum, p. 7. That statement is not accurate. The relevant period is the period in which the transfers to Debtor were made, which was from June 27, 2014 - January 5, 2015. Debtor and Hong testified without contradiction that Hong lived outside of this state from 2009 to late 2014. Therefore, at the time of most of the transfers in question, Hong and Debtor were not living in the same state, much less the same home. It is true that Debtor and Hong share a home now and that the evidence produced at trial establishes that they have a close relationship and that Debtor assists his mother in various ways. However, I decline to infer from those facts that Debtor assisted or colluded with Hong in fraudulently transferring assets.

Debtor's maternal aunt, Elizabeth Lai (Elizabeth) testified at the trial that Debtor did know about the 2007 documents because he made certain statements to that effect a day or two after the 2007 documents were signed. I do not find Elizabeth's testimony on this point to be trustworthy for two reasons. First, Elizabeth's memory of the event appears to be unreliable. On direct examination, Elizabeth testified that one of her siblings besides Hong was present when Debtor made the allegedly incriminating statement. At her deposition, Elizabeth said two of her siblings other than Hong were present. See Exhibit P, 10:19-11:13. However, on cross examination by Debtor's attorney and questioning by the Court, Elizabeth stated that none of those siblings were in the United States at the time Debtor allegedly made the incriminating statement. The content of Debtor's alleged incriminating statement also changed somewhat as stated by Elizabeth in her deposition and at trial. Second, Debtor established at trial that Elizabeth has a history of engaging in questionable financial dealings and transactions. For example, she transferred a business and real property to Hong under suspicious circumstances and possibly even without Hong's knowledge or at least full understanding. I therefore generally do not find Elizabeth to be a credible witness.[10]

---

[10] Plaintiff also introduced into evidence a 2004 document purporting to be a family will, which was allegedly signed by Hong and Debtor. See Exhibit 22. That document states that although the Property is titled in Debtor's name, he has no actual ownership interest. Although the document could tend to prove that Debtor had some knowledge of Plaintiff's alleged claim to a portion of the sale proceeds, that proof is attenuated. Even if Debtor was aware of Plaintiff's alleged claim to a portion of the proceeds of a sale of the Property, Debtor testified that he had no knowledge of the sale of the Property when he accepted the June 27

Even if I am wrong and Hong engaged in a fraudulent transfer scheme at the relevant time and Debtor assisted or colluded with Hong, there is one final problem with Plaintiff's case. For the exception to discharge set forth in § 523(a)(2)(A) to apply, "the debtor's fraud must result in a loss of property to the creditor." 5 Collier on Bankruptcy ¶ 523.08[1][a]. Hong transferred approximately $37,000 to Debtor in the Checks. Plaintiff does not dispute that Hong was entitled to one-half of the proceeds of the sale of the Property, which would be approximately $125,000. Plaintiff made no attempt to establish the proper tracing method in his trial brief or at trial. It was only during closing argument, in response to my question on the topic, that Plaintiff advocated for application of a "first in first out" accounting rule, but he failed to offer any reasoned argument or authority to support that being the proper approach. More importantly, the Property did not sell until sometime in September of 2014. That means that first money in did not even come until well after all most all of the transfers at issue.

For the reasons stated above, I conclude that to the extent Debtor owes Plaintiff a debt, it is dischargeable.

### C. Debtor's Request for Attorney Fees and Costs Under § 523(d)

Debtor requests attorney fees in his answer pursuant to § 523(d), which provides:

> "If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust."

Debtor did not address his request for attorney fees and costs at trial. If Debtor still intends to seek attorney fees, he shall file a brief addressing his entitlement to fees under § 523(d) within 10 days after the date of this letter. If Debtor files such a brief, Plaintiff may file a responsive brief no later than 10 days after Debtor files his brief. If I determine that Debtor is entitled to attorney fees under § 523(d), the amount of the fees to which Debtor is entitled will be determined at a later date.

---

check. Indeed, as I have already discussed, the Property was not sold until September. In addition, I have a number of doubts about the validity of the 2004 document. Debtor denied that he actually signed the document. Debtor also testified that his name has never appeared on the Property's title and Plaintiff produced no evidence to the contrary. In addition, Plaintiff could not explain why the 2007 documents would be necessary if he already had this 2004 document.

      If Debtor does not intend to seek attorney fees, Mr. Shipley shall submit a judgment within 10 days after the date of this letter.

                                              Sincerely,

                                              PETER C. MCKITTRICK
                                              Bankruptcy Judge